IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

CENTER FOR POPULAR DEMOCRACY
ACTION, *et al.*,

        Plaintiffs,

    v.

BUREAU OF THE CENSUS, *et al.*,

        Defendants.

Case No. 19 Civ. 10917 (AKH)

**DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL EXPEDITED
PRODUCITON OF THE ADMINISTRATIVE RECORD**

GEOFFREY S. BERMAN
United States Attorney for the
Southern District of New York
86 Chambers Street, 3rd Floor
New York, New York 10007
Tel.: (212) 637-2737/2777
Fax: (212) 637-2702
E-mail: lucas.issacharoff@usdoj.gov
       emily.bretz@usdoj.gov

LUCAS ISSACHAROFF
EMILY BRETZ
Assistant United States Attorneys
– Of Counsel –

**TABLE OF CONTENTS**

I. Preliminary Statement ..................................................................................................1

II. Background ....................................................................................................................2

    A. Factual Background .................................................................................................2

    B. Procedural Background ............................................................................................5

III. Argument .......................................................................................................................7

    A. The Government Anticipates Moving to Dismiss with a High Probability of Success....7

        1. Plaintiffs Fail to State a Claim for Relief Under the APA ..........................................7

        2. Plaintiffs' Claims Are Barred on Additional Grounds ..............................................11

    B. Expedited Production of the Administrative Record Is Not Justified............................13

    C. Assembling the Administrative Record Would Be Highly Burdensome.......................15

IV. Conclusion ...................................................................................................................16

## TABLE OF AUTHORITIES

**Cases**

*Bar MK Ranches v. Yuetter*,
  994 F.2d 735 (10th Cir. 1993) ...................................................................................................15

*Department of Commerce v. New York*,
  139 S. Ct. 2551 (2019) ..............................................................................................................12

*First City Nat'l Bank & Trust Co. v. Simmons*,
  878 F.2d 76 (2d Cir. 1989) ........................................................................................................13

*In re United States*,
  138 S. Ct. 443 (2017) ................................................................................................................13

*Lujan v. National Wildlife Federation*,
  497 U.S. 871 (1990) ............................................................................................................9, 10

*Nat'l Ass'n for the Advancement of Colored People v. Bureau of the Census*,
  382 F. Supp. 3d 349 (D. Md. 2019) ......................................................................................6, 12

*Nat'l Ass'n for the Advancement of Colored People v. Bureau of the Census*,
  399 F. Supp. 3d 406 (D. Md. 2019) ........................................................................ 6, 7, 10, 11

*Nat'l Ass'n for the Advancement of Colored People v. Bureau of the Census*,
  No. 19-1863, --- F.3d ---, 2019 WL 6903962 (4th Cir. Dec. 19, 2019) ...............................7, 9

*New York v. U.S. Dep't of Commerce*,
  351 F. Supp. 3d 502 (S.D.N.Y. 2019) ......................................................................................12

*Norton v. S. Utah Wilderness Alliance*,
  542 U.S. 55 (2004) ........................................................................................................ 8, 10, 11

*Notaro v. Koch*,
  95 F.R.D. 403 (S.D.N.Y. 1982) ................................................................................................13

*Pac. Shores Subdivision Cal. Water District v. U.S. Army Corps of Eng'rs*,
  448 F. Supp.2d 1 (D.D.C. 2006) ...............................................................................................15

*Special Situations Cayman Fund, L.P. v. Dot Com Entm't Grp., Inc.*, No. 03-CV-0811E(F),
  2003 WL 23350128 n.7 (W.D.N.Y. Dec. 5, 2003) ..................................................................13

*Tough Traveler, Ltd. v. Outbound Prods.*,
  60 F.3d 964 (2d Cir. 1995) ........................................................................................................14

*U.S. Dep't of Commerce v. U.S. House of Representatives*,
  525 U.S. 316 (1999) ..................................................................................................................12

*Wyler-Wittenberg v. MetLife Home Loans, Inc.*,
  899 F. Supp. 2d 235 (E.D.N.Y. 2012) ......................................................................................13

**Statutes**

5 U.S.C. § 702..................................................................................................................................8
5 U.S.C. § 706.............................................................................................................................5, 6
5 U.S.C. §§ 500 *et seq.* ...................................................................................................................1
13 U.S.C. § 141(b) ..........................................................................................................................3
28 U.S.C. § 1404...........................................................................................................................13

## I. Preliminary Statement

Plaintiffs seek expedited production of the Administrative Record in this litigation challenging the Census Bureau's operational plan for carrying out the 2020 Census. The breadth of Plaintiffs' challenge and the corresponding scope of the relief sought demonstrate both why Plaintiffs' claims are not permitted by the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 500 *et seq.*, and why expedited production of the Administrative Record as the 2020 Census is already underway would be unwarranted and highly burdensome. For the reasons set forth below, Plaintiffs are not entitled to expedited production of the Administrative Record.

First, Plaintiffs' APA claims, for which they seek to compel the record, are likely to be dismissed. Plaintiffs' complaint in this matter is nearly identical to one filed in the District of Maryland. In that case, on December 19, 2019, the Fourth Circuit upheld the dismissal of the plaintiffs' APA claims, and remanded for consideration of plaintiffs' constitutional claims. The Fourth Circuit's holding, while not binding, speaks directly to the issues raised in this case, and dismissal of the instant complaint's APA claims is warranted for the same reasons affirmed by the Fourth Circuit. Given the Government's anticipated motion to dismiss, litigation over scope and pace of production of the Administrative Record would waste both judicial resources and the already-stretched resources of the Census Bureau.

Second, production of the Administrative Record—let alone expedited production—would severely burden the Census Bureau. Plaintiffs have not met their burden to show that expedited production is appropriate, particularly given the disruption it would cause to the 2020 Census, which is well underway. And Plaintiffs' claim that the imminence of the 2020 Census supports their request to expedite is undermined by their own delay in seeking relief, as the purportedly final agency action giving rise to their claims took place over 10 months ago.

**II.     Background**

    A.     <u>Factual Background</u>

The purpose of the 2020 Census is to conduct a census of population and housing by counting individuals living in the 50 states, the District of Columbia, and five territories, and recording their place of residence as of April 1, 2020, which is referred to as Census Day. Declaration of Deborah Stempowski ("Stempowski Decl.") ¶ 3. The Census Bureau began planning the 2020 Census in 2010. *Id*. The Census is a massive operation, with over 26,000 separate lines in the Master Activity Schedule, and 52 separate systems. *Id.* Conducting the Census requires the hiring and management of hundreds of thousands of employees. *Id.*

The Census Bureau is well underway in conducting the 2020 Census. *Id.* ¶ 4. Early Census operations, such as Address Canvassing and the Local Update of Census Addresses, are complete or nearing completion. *Id.* The first major field data collection operation of the 2020 Census, Address Canvassing, began in August and ended in October 2019. *Id.* ¶ 5. Address Canvassing is the process by which the Census Bureau validates addresses on the census list, adds missing address, and adds or corrects locations of specific addresses. *Id.* The Address Canvassing operation ensures that the Census Bureau's address list and maps are as exact as possible, which is vital to constructing a sampling frame to use for an accurate enumeration of the population. *Id.* The Address Canvassing operation was managed out of 39 Area Census Offices ("ACOs") across the nation. *Id.* The Census Bureau hired over 3,600 census field supervisors and over 32,000 listers to update and quality-check over 50 million addresses in over 1.1 million geographic blocks. *Id.* The operation was completed as specified, on time, and under budget. *Id.* The Address Canvassing operation is the first action in a set of highly integrated activities that result in the production and delivery of apportionment counts and redistricting data. *Id.* If the Census Bureau was required to redo its Address Canvassing—as suggested by Plaintiffs' challenge to the number

2

of ACOs, *see* Compl. ¶¶ 86-101, it would cause a delay to the remainder of work to be done, which could jeopardize the statutorily mandated December 2020 delivery of the apportionment counts to the President.  Stempowski Decl. ¶ 5 (citing 13 U.S.C. § 141(b)).

The Census Bureau is aggressively preparing for the 2020 Census enumeration of an estimated 147 million housing units. *Id.* ¶ 6.  In order to complete the enumeration, the Census Bureau is putting in place the required materials, people, facilities and equipment across the country. *Id.*  Specifically, to carry out its operations, the Census Bureau seeks to recruit 2.6 million individuals. *Id.* ¶ 7.  From the 2.6 million individuals recruited, the Census Bureau estimates hiring between 320,000 and 500,000 for peak operations; the majority of these individuals will be hired in March of 2020 and onboarded in May for Nonresponse Followup. *Id.*  Nonresponse Followup is scheduled to continue through July, and quality operations will continue after that. *Id.*

In addition to the 39 ACOs that successfully managed the nationwide Address Canvassing operation, an additional 209 offices have opened to support the 2020 Census peak operations. *Id.* ¶ 8.  For each of the 248 offices, space was leased, build-out of the space was completed, and furniture, supplies, and IT were deployed. *Id.*  All ACOs are now open and ready for business. *Id.*

Preparations for the self-response phase of the 2020 Census are also well underway. *Id.* ¶ 9.  In mid-June 2019, the Census Bureau began printing approximately 1.5 billion pieces including questionnaires, letters, inserts, and envelopes. *Id.*  In mid-July 2019, assembly of approximately 378 million questionnaire packages began. *Id.*  And, on November 1, 2019, the Census Bureau delivered the address file to the print vendor. *Id.*  On November 6, 2019, the Census Bureau began the address labelling of mail pieces for delivery to households across the nation in March 2020. *Id.*

The 2020 Census will be supported by 52 systems, which provide the IT-related capabilities and infrastructure for the 2020 Census. *Id.* ¶ 10. Such systems include software applications that manage recruiting and payroll, as well as systems, applications, and interfaces that are specific to the decennial census and are required to process census responses. *Id.* Each system has been developed and has completed or is undergoing rigorous testing to validate functionality, performance, and scalability. *Id.* Many of these systems already performed successfully in Address Canvassing. *Id.*

The first enumeration of the 2020 Census will take place on January 21, 2020 in Toksook Bay, Alaska. *Id.* ¶ 11. Field staff will conduct in-person enumeration of the residents prior to the thaw, when residents disperse to seasonal employment. *Id.* In-mid March, upon receipt of invitations to self-respond to the 2020 Census, Internet, telephone, and paper response options will be available across the nation. *Id.*

During the self-response period, the Census Bureau will deploy staff across the country to assist people in completing their decennial census response. *Id.* ¶ 12. The staff are part of a mobile questionnaire assistance response effort deployed to areas that are hard to count and/or have a low self-response rate. *Id.*

Approximately six weeks after Census Day, the Census Bureau will begin its Nonresponse Followup operation. *Id.* ¶ 13. From approximately mid-May through July 31, 2020, the Census Bureau will deploy hundreds of thousands of enumerators across the nation to visit addresses for which a self-response has not been received. *Id.* Limited use of administrative records will occur after one unsuccessful in-person attempt to every non-responding household. *Id.* Administrative records will be used to determine if an address can be classified as vacant or, in the case of occupied units, can be used in place of a respondent supplied response. *Id.*

From August 1 through November 30, 2020, the Census Bureau will process the responses received, resulting in the production of the Census Unedited File ("CUF"). *Id.* ¶ 14. Producing the CUF involves coding write-in responses, updating the address and feature databases, determining housing unit status of occupied, vacant or non-existent, establishing a single enumeration record for an address when multiple returns are received, and determining the final housing unit population count. *Id.* The CUF is used to produce the apportionment counts, which must be created, reviewed, cleared and delivered to the President by December 31, 2020. *Id.*

At the same time that the Census Bureau is producing the apportionment counts, it also processes the CUF to produce characteristic information about the households counted, including implementing statistical procedures to account for missing or inconsistent information. *Id.* ¶ 15. When the Census Edited File ("CEF") is complete, the Census Bureau then implements disclosure avoidance procedures to ensure that when it releases tabulated statistics, it does not reveal information on individual respondents. *Id.* The release of the redistricting data begins February 18, 2021 and runs through March 31, 2021. *Id.*

B.  Procedural Background

The Complaint purports to state claims seeking relief from assertedly arbitrary and capricious action under the APA, 5 U.S.C. § 706(2)(A); unconstitutional agency action under the APA, *id.* § 706(2)(B); and violation of the Enumeration Clause, U.S. Const. art. I, § 2, cl. 3. These are precisely the claims brought in a Maryland lawsuit involving the same attorneys from Jenner & Block LLP and the Yale Law School Rule of Law Clinic. *See* Second Amended Complaint (Dkt. No. 91), *Nat'l Ass'n for the Advancement of Colored People et al. v. Bureau of the Census et al.* ("*NAACP*"), No. 18 Civ. 891 (D. Md. April 1, 2019) (the "*NAACP* SAC").

The plaintiffs filed the *NAACP* SAC on April 1, 2019, two months after the February 1, 2019 publication of the 2020 Census Operational Plan that they identify as the relevant final

5

agency action subject to APA review. *See NAACP* SAC ¶¶ 31-33, 206, 212; Compl. ¶¶ 30-32, 176, 182. Defendants moved to dismiss the *NAACP* SAC on April 15, 2019, on the grounds that (1) plaintiffs' underfunding claims had been mooted; (2) plaintiffs' APA challenge was not to a discrete "agency action" but was rather a broad, programmatic attack on the design of the 2020 Census; (3) the Operational Plan did not represent a "final" agency action; (4) census design was committed to agency discretional by law; and (5) plaintiffs' claims were unripe because further refinements and modifications of the Operational Plan would continue to be made in the run-up to the 2020 Census. *See NAACP* Dkt. No. 95-1.

On August 1, 2019, the *NAACP* Court granted the motion to dismiss. *Nat'l Ass'n for the Advancement of Colored People v. Bureau of the Census*, 399 F. Supp. 3d 406 (D. Md. 2019). The Court dismissed the Enumeration Clause claim[1] on the basis that the underfunding claim had been mooted because Congress had passed a subsequent appropriations act designating funding for the Census, that the plaintiffs lacked standing, and that judicial review of the amount appropriated by Congress was barred by the political question doctrine. *Id.* at 413-19. Turning to the plaintiffs' APA claims, the Court found that those were deficient in several respects. First, the challenge was not, as claimed, to six discrete design choices, but rather amounted to a programmatic attack on the design of the 2020 Census. *Id.* at 420-22. Second, the plaintiffs sought to compel agency action, but could not identify any action "unlawfully withheld or unreasonably delayed," as required by the APA, 5 U.S.C. § 706(1). 399 F. Supp. 3d at 422-24. Third, the plaintiffs' claimed harm – that they would receive fewer resources as a result of undercounting – was too attenuated

---

[1] The Court had previously dismissed the Enumeration Clause claims other than that related to funding as unripe. *See Nat'l Ass'n for the Advancement of Colored People v. Bureau of Census*, 382 F. Supp. 3d 349 (D. Md. 2019).

from the Operational Plan to render that plan a determination of rights and obligations as required by the APA. *Id.* at 424-25.

On December 19, 2019, the Fourth Circuit issued an opinion affirming in part and reversing in part the District Court's dismissal of the *NAACP* Complaint. The Court unanimously affirmed the dismissal of the *NAACP* plaintiffs' APA claims, finding that the challenged actions were not "'circumscribed' and 'discrete'" as required by the APA. *Nat'l Ass'n for the Advancement of Colored People v. Bureau of the Census*, No. 19-1863, --- F.3d ---, 2019 WL 6903962, at *3-6 (4th Cir. Dec. 19, 2019). The Fourth Circuit reversed the dismissal of the plaintiffs' Enumeration Clause challenge, concluding that the District Court had erred in dismissing that portion of the action on ripeness grounds but declining to reach the merits of the claim, and remanded it to the District Court. *See id.* at *6-7.

**III. Argument**

    A. <u>The Government Anticipates Moving to Dismiss with a High Probability of Success</u>

        1. <u>Plaintiffs Fail to State a Claim for Relief Under the APA</u>

Plaintiffs' Complaint is little changed from that which was dismissed in the *NAACP* litigation, and contains the same fatal flaws. While the Government need not pre-litigate its motion to dismiss in order to oppose the motion to expedite the administrative record, even a brief canvass of the Complaint's defects makes clear that it would be inappropriate to require expedited preparation of an administrative record.

Plaintiffs identify five assertedly "arbitrary and irrational design choices" that they ask the Court to invalidate:

> a (a) plan to hire an unreasonably small number of enumerators; (b) drastic reduction in the number of Bureau field offices; (c) significant reduction in the Bureau's communications and partnership program, including the elimination of local, physical Questionnaire Assistance Centers; (d) decision to replace most In-

7

> Field Address Canvassing with In-Office Address Canvassing; and (e) decision to make only limited efforts to count inhabitants of units that appear vacant or nonexistent based on unreliable administrative records.

Compl. ¶¶ 36, 194. Granting these purportedly discrete demands would amount to a massive reorganization of a census process that has been a decade in the making and is already well underway.

Notwithstanding these purportedly discrete specific objections, the Complaint's prayer for relief makes clear that in reality Plaintiffs seek to compel, at an infeasibly late date, the wholesale restructuring of the 2020 Census. Exactly as in the *NAACP* litigation, the Complaint here asks the Court to "[e]nter an injunction that requires Defendants to implement a plan to ensure that hard-to-count populations will be actually enumerated in the decennial census . . . ." *Id.* ¶ 197. Thus, Plaintiffs do not seek the invalidation of specific, discrete agency actions.

The APA authorizes suit by a "person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute." 5 U.S.C. § 702. As Plaintiffs identify no other pertinent statute, that agency action must be one conforming to Section 551(13)'s definition of "agency action" as "the whole or a part of an agency rule, order, license, sanction, relief, or the equivalent or denial thereof, or failure to act." As the Supreme Court explained in *Norton v. Southern Utah Wilderness Alliance*, 542 U.S. 55 (2004), the limitations set forth in these sections of the APA "rule out several kinds of challenges." *Id.* First, "[t]he limitation to discrete agency action precludes the kind of broad programmatic attack we rejected in *Lujan v. National Wildlife Federation*." 542 U.S. at 64 (citation omitted). And second, "limitation to required agency action rules out judicial direction of even discrete agency action that is not demanded by law." *Id.* at 65. Similar to the challenges rejected in *Lujan* and

8

*Norton*, Plaintiffs' broad attack here on the Operational Plan for the 2020 Census—and the sweeping relief requested—is well beyond the scope of the APA.

> a. Plaintiffs' Programmatic Attack on the Operational Plan Is Not Permitted by the APA

As the Fourth Circuit held, Plaintiffs "do not actually challenge multiple discrete decisions made by the Census Bureau," but rather make "broad, sweeping . . . allegations" about the overall design of the 2020 Census. *NAACP*, 2019 WL 6903962, at *5-6. These sorts of programmatic challenges are precisely those forbidden by the Supreme Court in *Lujan v. National Wildlife Federation*.

In *Lujan*, the National Wildlife Federation ("NWF") challenged the implementation of the Federal Land Policy and Management Act of 1976, which directed the Secretary of the Interior and the Director of the Bureau of Land Management ("BLM") to prepare an inventory of all public lands and prepare land use plans. *See* 497 U.S. 871, 875-79 (1990). The NWF argued that the manner in which the Department of the Interior and the BLM had surveyed and classified public lands had failed to properly prioritize environmental and other concerns and focused excessively on mineral value. *See id.* at 879.

The Court explained that the plaintiff could not "seek *wholesale* improvement of this program by court decree, rather than in the offices of the Department or the halls of Congress, where programmatic improvements are normally made. Under the terms of the APA, respondent must direct its attack against some particular 'agency action' that causes it harm." *Id.* at 891. The Court went on to hold that "it is at least entirely certain that the flaws in the entire 'program'— consisting principally of the many individual actions referenced in the complaint, and presumably actions yet to be taken as well—cannot be laid before the courts for wholesale correction under

9

the APA, simply because one of them that is ripe for review adversely affects one of respondent's members." *Id.* at 892-93.

*Lujan* demonstrates that Plaintiffs' broad challenge to five fundamental features of the implementation of the 2020 Census is the sort of broad, programmatic attack not permitted by the APA. As the *NAACP* District Court held, "[t]he relief Plaintiffs request . . . cannot be read as anything less than court-ordered modification the Bureau's overall plan for the 2020 Census." *NAACP*, 399 F. Supp. 3d at 422. "[W]hat Plaintiffs seek is not changes to six discrete 'agency actions,' but rather a sweeping overhaul to the Final Operational Plan, which exceeds the scope of reviewable 'agency action.'" *Id.* Plaintiffs here may have reduced their list of challenged actions from six to five—recognizing the lateness of the day, they no longer challenge the cancellation of certain field tests—but the scope of their challenge to the 2020 Census is no less ambitious than that rejected in *Lujan* and *NAACP*.

b. <u>Plaintiffs' Requested Relief Is Not Permitted by the APA</u>

If the scope of Plaintiffs' challenge exceeds the permissible bounds of the APA, so too does the correspondingly sweeping claim for relief. As the Fourth Circuit held, "'[s]etting aside' one or more of these 'choices' necessarily would impact the efficacy of the others, and inevitably would lead to court involvement in 'hands-on' management of the Census Bureau's operations. This is precisely the result that the 'discreteness' requirement of the APA is designed to avoid." *NAACP* Slip Op. at 13 (quoting *Norton*, 542 U.S. at 66-67) (citations omitted). The Fourth Circuit relied upon *Norton v. Southern Utah Wilderness Alliance*, the Supreme Court's seminal case restricting plaintiffs' ability to obtain sweeping implementation of policy as relief under the APA.

In *Norton*, the Court rejected a challenge by the Southern Utah Wilderness Alliance alleging that the BLM had failed to take adequate measures to reign in off-road vehicle use on lands under consideration for preservation as wilderness and sought to force the BLM to

10

implement previously produced land use plans. *See* 542 U.S. at 65-66. Citing *Lujan*, the Court held that the APA's

> limitation to required agency action rules out judicial direction of even discrete agency action that is not demanded by law (which includes, of course, agency regulations that have the force of law). Thus, when an agency is compelled by law to act within a certain time period, but the manner of its action is left to the agency's discretion, a court can compel the agency to act, but has no power to specify what the action must be.

*Id.* at 65.

As *Norton* makes clear, Plaintiffs cannot demand

> an injunction that requires Defendants to implement a plan to ensure that hard-to-count populations will be actually enumerated in the decennial census, which shall include but not be limited to a plan that: (a) restores the Bureau's 2020 Partnership Program to no less than 2010 levels, adjusted for inflation and population growth; (b) augments the Bureau's 2020 Integrated Communications Program to achieve coverage equivalent to the 2010 Census, accounting for inflation, population growth, and the increased cost of advertising in 2020; (c) requires opening a number of in-person Questionnaire Assistance Centers commensurate to that used in the 2010 Census; and (d) increases the number of enumerators to no less than 2010 levels, adjusted for population growth.

Compl. ¶ 197. In doing so, "Plaintiffs are asking the Court, both directly and indirectly, to compel agency action." *NAACP*, 399 F. Supp. 3d at 422. Indeed, the breadth and depth of what Plaintiffs seek to compel would require the Court to assume comprehensive oversight of the Census Bureau as it implements the 2020 Census, down to the number of enumerators hired, the advertising outlay, and the number of Questionnaire Assistance Centers. This is precisely the sort of judicial compulsion of specific agency action that *Norton* forbids in the absence of statutory mandate.

### 2. Plaintiffs' Claims Are Barred on Additional Grounds

Defendants are likely to raise additional arguments in a motion to dismiss, including standing and failure to state a claim. In particular, Defendants will move to dismiss on the grounds that Plaintiffs fail to state a viable claim under the Enumeration Clause.

11

Although neither the Maryland District Court nor the Fourth Circuit reached the merits of the Enumeration Clause challenge presented in the *NAACP* litigation, such claims are not viable. Plaintiffs' broad challenge to the conduct of the census bears little relationship to the discrete litigation over the citizenship question challenges that the Supreme Court found amenable to review. Rather Plaintiffs challenge the "virtually unlimited discretion" afforded to Congress and delegated to the Secretary of Commerce. *Department of Commerce v. New York*, 139 S. Ct. 2551, 2575 (2019) (internal quotation marks omitted).

The Supreme Court has never found a violation of the Enumeration Clause. More important, the cases that considered such claims, unlike the present case, involved specific decisions potentially amenable to review. As the *NAACP* District Court noted in a prior decision dismissing the bulk of plaintiffs' Enumeration Clause challenge, "the challenge in U.S. House of Representatives (like the citizenship question challenges in the 2020 Census cases) was to a discrete decision of the Census Bureau . . . as opposed to launching (as Plaintiffs do here) a sweeping challenge to the staffing, leadership, funding, design, and security of the 2020 Census." *NAACP v. Bureau of the Census*, 382 F. Supp. 3d 349, 368 (D. Md. 2019); *see U.S. Dep't of Commerce v. U.S. House of Representatives*, 525 U.S. 316, 326 (1999) (noting final agency action); *New York v. U.S. Dep't of Commerce*, 351 F. Supp. 3d 502, 627 (S.D.N.Y. 2019) (same). Plaintiffs do not (and cannot) plausibly allege a violation of the Enumeration Clause here based on matters clearly committed to the Secretary's discretion—such as how many enumerators to hire, how many assistance centers to open, and what extent to rely on online as opposed to door-to-door tools.

B. <u>Expedited Production of the Administrative Record Is Not Justified</u>

As set forth above, Defendants anticipate moving to dismiss the litigation.[2] Accordingly, given the likelihood that the Court will never need to consider the Administrative Record, it would be inefficient and unreasonably burdensome to compel production of the record here. *Cf. In re United States*, 138 S. Ct. 443, 445 (2017) (holding that district court should first resolve threshold questions of reviewability under the APA and lack of jurisdiction before ordering compilation and production of administrative record because "[e]ither of those arguments, if accepted, likely would eliminate the need for the District Court to examine a complete administrative record") Furthermore, even if production of the Administrative Record were warranted, Plaintiffs' request for expedited production is not reasonable or supported by good cause notwithstanding their motion's arguments. *See* Pl. Mot. at 4.[3]

To start, Plaintiffs argue that their "claims of urgency are eminently reasonable given the impending start date for the 2020 Census," and that their "claims are at risk of becoming moot if they must wait longer to receive the administrative record." Pl. Mot. at 4. However, Plaintiffs' claims here are based on a challenge to actions included in the Final Operational Plan, which was

---

[2] The Government is further evaluating whether, given the procedural postures of the instant litigation and the *NAACP* litigation, it will move to transfer the litigation to the District of Maryland pursuant to 28 U.S.C. § 1404. *See generally Wyler-Wittenberg v. MetLife Home Loans, Inc.*, 899 F. Supp. 2d 235, 243 (E.D.N.Y. 2012) ("The 'first-filed' rule is a well-settled legal doctrine, instructing that 'where there are two [or more] competing lawsuits, the first suit should have priority, absent the showing of balance of convenience or special circumstances giving priority to the second.'" (quoting *First City Nat'l Bank & Trust Co. v. Simmons*, 878 F.2d 76, 79 (2d Cir. 1989))).

[3] "Courts are split as to whether a party seeking expedited discovery must satisfy a 'good cause' or 'reasonableness' standard or the more stringent standard set forth in *Notaro v. Koch*, 95 F.R.D. 403, 405 (S.D.N.Y. 1982), which largely tracks the standard required for obtaining a preliminary injunction." *Special Situations Cayman Fund, L.P. v. Dot Com Entm't Grp., Inc.*, No. 03-CV-0811E(F), 2003 WL 23350128, at *1 n.7 (W.D.N.Y. Dec. 5, 2003) (citing cases). However, even assuming, arguendo, that Plaintiffs must only establish good cause or reasonableness, they fail to do so here.

13

published on February 1, 2019. Plaintiffs did not file their complaint in this case until November 26, 2019, and Defendants were not served until December 9, 2019—10 months after the challenged plan was published. Any claims of urgency are thus undermined by Plaintiffs' own delay in seeking expedited relief. *Cf. Tough Traveler, Ltd. v. Outbound Prods.*, 60 F.3d 964, 968 (2d Cir. 1995) (injunction may not be warranted when plaintiff delays in bringing suit because "failure to act sooner undercuts the sense of urgency that ordinarily accompanies a motion for preliminary relief and suggests that there is, in fact, no irreparable injury" (internal quotation marks omitted)). Indeed, it is clear that Plaintiffs here could have filed their case much earlier, given that the same counsel first raised the same arguments in Maryland district court in an amended complaint filed on April 15, 2019. Plaintiffs are not entitled to expedited relief where any delay was of their own making.

Nor should the Court credit Plaintiffs' argument that their request for expedited production is reasonable because the Administrative Record will be "narrowly cabined to information concerning the five discrete final agency actions that are the subject of the APA claims in this suit: the hiring of enumerators, the opening of field offices, the reduction to the communications and partnership program, the shift to majority in-office address canvasing, and the excessive reliance on administrative records." Pl. Mot. at 5. Plaintiffs' suggestion that any record in this case would be "narrowly cabined" strains credulity. Indeed, as discussed above, Plaintiffs' complaint is premised on the theory that Defendants have reduced field operations since the 2010 Census, and they seek an injunction requiring Defendants to implement a new wide-ranging plan, that (among other things): "(a) restores the Bureau's 2020 Partnership Program to no less than 2010 levels, adjusted for inflation and population growth; (b) augments the Bureau's 2020 Integrated Communications Program to achieve coverage equivalent to the 2010 Census, accounting for

14

inflation, population growth, and the increased cost of advertising in 2020; (c) requires opening a number of in-person Questionnaire Assistance Centers commensurate to that used in the 2010 Census; and (d) increases the number of enumerators to no less than 2010 levels, adjusted for population growth." Compl. ¶ 197. Each and all of these demands self-evidently calls for fundamentally remaking the operational plans for the 2020 Census, which is already well underway. *See* Stempowski Decl. ¶¶ 4-5.

Given Plaintiffs' expansive challenge and request for relief, an Administrative Record in this case would likely include a very wide range of information, the production of which would be extremely burdensome to the agency. *Id.* ¶ 18. Indeed, it is possible that any Administrative Record might include information about why decisions were made with respect to these broad categories for both the 2010 and 2020 Census, and thus could date back nearly 20 years. *Bar MK Ranches v. Yuetter*, 994 F.2d 735, 739 (10th Cir. 1993) ("The complete administrative record consists of all documents and materials directly or indirectly considered by the agency."); *Pac. Shores Subdivision Cal. Water District v. U.S. Army Corps of Eng'rs*, 448 F. Supp.2d 1, 4 (D.D.C. 2006) (the "whole record" includes "all documents and materials that the agency directly or indirectly considered . . . [and nothing] more nor less"). Accordingly, contrary to Plaintiffs' contentions, their request is neither narrowly tailored nor reasonable.

        C.      <u>Assembling the Administrative Record Would Be Highly Burdensome</u>

Finally, to require expedited production of the Administrative Record would, at this juncture, be highly burdensome and would significantly impair Defendants' efforts to manage and carry out the 2020 Census. As fully set forth above, key aspects of the 2020 Census are complete or nearing completion. Stempowski Decl. ¶ 4. Further, the first enumeration of the 2020 Census will take place on January 21, 2020. *Id.* ¶ 11. To require Census staff members to shift their focus from Census work to compiling such a massive Administrative Record, particularly on an

15

expedited basis, could jeopardize the ability of the Census Bureau to carry out the 2020 Census in accordance with its statutorily mandated deadline of December 2020. *Id.* ¶ 19.

## IV. Conclusion

For reasons set forth above, the Court should deny Plaintiffs' motion to expedite production of the Administrative Record.

Dated: December 20, 2019
        New York, New York

Respectfully submitted,

GEOFFREY S. BERMAN
United States Attorney for the
Southern District of New York
*Attorney for the Defendants*

By:   /s/ Lucas Issacharoff
LUCAS ISSACHAROFF
EMILY BRETZ
Assistant United States Attorneys
86 Chambers Street, 3rd Floor
New York, New York 10007
Tel.: (212) 637-2737/2777
Fax: (212) 637-2702
E-mail: lucas.issacharoff@usdoj.gov
       emily.bretz@usdoj.gov